**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

DEFENDING EDUCATION, *et al.*,

*Plaintiffs*,

v.

AUBREY C. SULLIVAN, in her official capacity as the Director of the Colorado Civil Rights Division, *et al.*,

*Defendants*.

Case No. 1:25-cv-01572-RMR-MDB

COMMITTEE OF FIVE, INC.,

*Plaintiff*,

v.

AUBREY C. SULLIVAN, in her official capacity as the Director of the Colorado Civil Rights Division, *et al.*,

*Defendants*.

Case No. 1:25-cv-01668-RMR-MDB

DOXA ENTERPRISE, LTD.,

*Plaintiff*,

v.

AUBREY C. SULLIVAN, in her official capacity as the Director of the Colorado Civil Rights Division, *et al.*,

*Defendants*.

Case No. 1:25-cv-02177-RMR-MDB

**DIVISION AND COMMISSION DEFENDANTS' OBJECTIONS TO THE REPORT & RECOMMENDATION ON THEIR MOTION TO DISMISS**

## TABLE OF CONTENTS


INTRODUCTION .......................................................................................... 1

1. The R&R erred in determining that Plaintiffs established that their conduct is arguably proscribed by CADA. ........................................................................ 1

2. The R&R erred in determining credible threat of enforcement.......................... 5

3. Medical Plaintiffs did not establish their speech has been chilled...................... 7

4. Plaintiffs do not have standing to challenge CADA's publication clauses .......... 7

5. Dr. Morrell does not have standing based on his personal advocacy ................ 8

6. The R&R erred in declining separately to assess the standards for ripeness, which Plaintiffs' premature challenges cannot meet. ............................................ 8

CONCLUSION ........................................................................................... 10

## INTRODUCTION

The R&R violates the tenet that federal courts must "avoid 'premature adjudication' and abstain from 'entangling themselves in abstract disagreements'" to ensure the quality of judicial decision-making and the wise use of scarce judicial resources. *See Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 119 F.3d 1437, 1443 (10th Cir. 1997) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967)). Plaintiffs base their pre-enforcement challenge to CADA on their asserted plans to misgender and deadname transgender people. But CADA does not prohibit misgendering and deadnaming generally; rather, such conduct must rise to the level of creating a subjectively and objectively hostile environment (i.e., harassment) that amounts to the denial of full and equal enjoyment of a public accommodation's goods, services, facilities, privileges, advantages, or accommodations. *DE*, Dkt. 98-1, 4-6. The R&R did not consider the harassment framework's necessarily fact-intensive inquiry that requires information about the specific circumstances of these interactions to determine whether Plaintiffs' conduct rises to the level of harassment in violation of CADA, and Plaintiffs offered no specific facts describing their planned interactions that would permit such inquiry. Plaintiffs have thus failed to establish that they will imminently suffer a concrete injury as required for standing and have failed to establish that this dispute is fit for judicial decision and threatens undue hardship as required for ripeness.

**1. The R&R erred in determining that Plaintiffs established that their conduct is arguably proscribed by CADA.**

Citing *Scott v. Allen*, 153 F.4th 1088 (10th Cir. 2025), the R&R found that

Plaintiffs' proposed conduct of misgendering and deadnaming "on an ongoing basis and as a matter of practice" is "more likely than not to give rise to a denial—or perceived denial—of services in the future" and therefore is "arguably proscribed" by CADA. R&R 18. The R&R lowers the standing bar too far, ignoring that Plaintiffs must allege a sufficiently "concrete and particularized" and "actual or imminent, not conjectural or hypothetical injury." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-9 (2014) ("*SBA List*").

Nowhere does *Scott v. Allen* suggest that a plaintiff has standing to challenge a statute—that nobody has asserted Plaintiffs violate—based on a general plan of conduct that the statute does not squarely address. In *Scott*, the Tenth Circuit held that a process server had standing to challenge a statute prohibiting publication of personal information of police officers if the person publishing the information knows or should know the publication could create an imminent threat to the subject's safety. 153 F.4th at 1092. Because the plaintiff knowingly published personally-identifiable information about a state trooper, the Process Server Association had already concluded that the plaintiff had violated the statute, and the trooper had filed complaints against the plaintiff, the plaintiff had thus "provide[d] facts that show[ed] his conduct" was arguably proscribed by the statute. *Id.* at 1097. No such facts exist here.

Other decisions have found the specificity requisite for quality judicial decision-making and wise use of scarce judicial resources when the allegations involved specific conduct that the plaintiff wished to engage in that the challenged statute *on its face* appeared to prohibit. *See SBA List*, 573 U.S. at

159 (discussing *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298-302 (1979) (standing where challenger raised concerns that inadvertent inaccuracies would violate a law that "on its face proscribe[d] dishonest, untruthful, and deceptive publicity"); *Virginia v. Am. Booksellers Assn., Inc.*, 484 U.S. 383, 386, 393 n.8 (1988) (standing where bookseller introduced 16 specific books it believed prohibited by statute making it a crime to "'knowingly display for commercial purpose'" material that is "'harmful to juveniles'" and state's attorney acknowledged it would "concede" that one of the books fell within the statute); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 8 (2010) (standing where "plaintiffs claimed that they had provided support to groups designated as terrorist organizations" when statute criminalized "'knowingly provid[ing] material support or resources to a foreign terrorist organization'")).

In contrast, courts have found a lack of standing where plaintiffs offer only vague allegations regarding their conduct that leaves unclear whether that conduct would violate the statute. *See, e.g., Davis v. Colerain Twp.*, 51 F.4th 164, 172-73 (6th Cir. 2022) (holding that plaintiff failed to establish standing to challenge police department's social media policy proscribing "inappropriate or offensive" comments where she testified only that she "wish[es] to continue" to make comments and did not show that the policy covered her prior comments); *Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*, 80 F.4th 215, 220 (3d Cir. 2023) (firearm association's intended "plan to make, market, and sell guns" was too general and "murky" to show arguably forbidden conduct to challenge statute regulating gun sales); *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002,

1007 (9th Cir. 2011) ("an allegation that a plaintiff is 'subject to' the challenged ordinance cannot suffice" to meet the "arguably proscribed" requirement).

Plaintiffs here assert only a general plan to deadname and misgender. But CADA does not on its face prohibit misgendering and deadnaming—it only prohibits such conduct when it rises to the level of harassment that denies the full and equal enjoyment of a public accommodation's goods and services based on protected class status. *DE*, Dkt. 98-1, at 4-6. Plaintiffs thus identify no specific conduct that they wish to engage in that CADA, on its face, appears to prohibit. Nor do they identify any details surrounding these statements that would support an inference that Plaintiffs may arguably violate CADA with their proposed conduct. *DE*, Dkt. 98-1, 459:20-460:20, 462:18-463:14, 534:66:7-534:67-68:22. While Plaintiffs assert that they will misgender and deadname, what will their interactions with transgender individuals actually involve, especially where they assert that they treat all customers with dignity and respect? Whether and when conduct rises to the level of illegal harassment is a necessarily fact-intensive analysis, and Plaintiffs simply have not put forward any details that shows their conduct may amount to harassment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) ("whether an environment is 'hostile' or 'abusive' [for Title VII harassment purposes] can be determined only by looking at all the circumstances"); *Iweha v. State of Kansas*, 121 F.4th 1208, 1223 (10th Cir. 2024) (for hostile work environment claim, a plaintiff ordinarily "must show more than a few isolated incidents of enmity on the basis of the protected status," and "sporadic slurs are insufficient; there must be a steady barrage of opprobrious

comments" based on protected status) (cleaned up).

Further, jurisdictional discovery confirms that Plaintiffs' proposed conduct is too abstract to establish it will arguably deny individuals, both subjectively and objectively, the full and equal enjoyment of a public accommodation. Plaintiffs' prior interactions with transgender individuals have never resulted in complaints to the Division, and they assert that they treat individuals with dignity and respect. *DE*, Dkt. 82-1, at 128; 133; 179; 198. Doxa admitted that rather than misgender or deadname, it will "use a form of address that does not contradict the individual's biological sex, such as the person's first or last name." *Doxa,* Dkt. 4-2. Moreover, the Division has not found probable cause in any public accommodation case based on misgendering or deadnaming alone. *See DE,* Dkt. 99, PA pp. 2-3, Supp. Sullivan Decl. ¶ 3; *id.* pp. 5-18 (chart compiling cases).

In sum, under these facts, both the Court and Defendants are left guessing what Plaintiffs might do that might arguably rise to the level of harassment that denies full and equal enjoyment of a public accommodation's services. The Court should reject Plaintiffs' request to extend the "arguably proscribed" inquiry to a level of abstraction that ignores the requirement that, as a matter of Article III jurisdiction, the "alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

**2. The R&R erred in determining credible threat of enforcement.**

In failing to recognize the lack of past enforcement as undermining any credible threat of enforcement, the R&R overlooked that Commission Rule 81.6

has made clear since 2009 that misgendering and deadnaming can amount to a violation when they rise to the level of harassment based on sexual orientation (which was then defined to include gender identity). 3 CCR 708-1, Rule 81.6(A)(4). Enacted in 2025, H.B. 25-1312 simply codified what is reflected in this longstanding rule: that "gender expression" as a protected characteristic includes an individual's "chosen name," which includes "how the individual chooses to be addressed." C.R.S. § 24-34-301(3.5), (9). That the Division has never, in 17 years, found probable cause for a charge alleging deadnaming and misgendering alone establishes the absence of past enforcement, and thus weighs against any credible threat of enforcement.

On disavowal, the R&R found that Director Sullivan's assurances that deadnaming and misgendering are not *per se* CADA violations were not the "clear and definitive commitments" necessary to discount a credible threat of enforcement at the motion to dismiss stage based on Plaintiffs' planned interactions. R&R 20-21. Such reasoning, however, only rewards Plaintiffs for describing their proposed conduct at such a high level of generality that complete disavowal is not possible. Defendants provided in discovery as much of a disavowal possible given the absence of any specific facts regarding how Plaintiffs' proposed conduct may apply in practice—facts that are necessary under the flexible, multi-factor analysis used to determine whether harassment, subjectively and objectively, denies an individual the full and equal enjoyment of a public accommodation's service. Without facts about the nature of specific interactions—e.g., whether plaintiffs' conduct is isolated or repeated and other

circumstances surrounding the commercial transaction and interaction—Defendants cannot determine whether Plaintiffs' proposed conduct would or would not violate CADA. *See Davis*, 51 F.4th at 174 (failure to disavow did not support standing where plaintiff did not show she "plans to engage in speech that might arguably fall within the [challenged rule]," and disavowal "is just one data point among many").

In sum, a proper weighing of these factors shows that Plaintiffs have not met their burden in proving credible threat of enforcement for standing.

**3. Medical Plaintiffs did not establish their speech has been chilled.**

For the same reasons, the R&R erred in finding the Medical Plaintiffs' speech chilled. Because Medical Plaintiffs described their prior and desired conduct so generally that they cannot assert it would implicate CADA's harassment standard, they have established neither past conduct nor an intent to engage in future conduct affected by CADA. Nor can they plausibly allege that any choice to avoid speaking is due to a credible threat of enforcement.

**4. Plaintiffs do not have standing to challenge CADA's publication clauses.**

The R&R erred in failing to address whether Plaintiffs have standing to challenge CADA's publication clauses where the Division and Commission have unequivocally disavowed enforcement based on Plaintiffs' written policies as provided in this case. Plaintiffs challenge not only C.R.S. § 24-34-601(2)(a), which precludes denial of the "full and equal enjoyment" of an accommodation based on protected class status, but also each provision of CADA that precludes written communications from stating such intent. *See* C.R.S. § 24-34-601(2)(a); C.R.S. § 24-34-701(1). The Division and Commission have stated unequivocally:

> Although the publications may suggest and/or state an intent to treat individuals differently based on gender identity, the publications do not establish that their application will create an environment that is subjectively and objectively hostile to individuals based on their gender identity. As a result, the publications, standing alone, do not violate the various CADA provisions directed to written communications.

*DE,* Dkt. 98-1, 11-12, 337, 510. This disavowal precludes Plaintiffs from establishing a credible fear of enforcement under the publication clauses.

**5. Dr. Morrell does not have standing based on his personal advocacy.**

The R&R did not address whether Dr. Morrell has standing based on his personal advocacy activities outside of practicing medicine. The R&R's finding that the advocacy organizations lack standing because they are not places of public accommodations should apply equally to Dr. Morrell's personal advocacy, where he is not in the "business of selling goods to the public [and does not] offer services, facilities, privileges, advantages or accommodations." *See* R&R at 24.

**6. The R&R erred in declining separately to assess the standards for ripeness, which Plaintiffs' premature challenges cannot meet.**

The R&R misunderstood Defendants' motion as arguing that standing and ripeness are "coterminous." R&R at 11 n.2. While the same factors that show Plaintiffs' lack of standing also inform Article III and prudential ripeness inquiries, the standards are distinct. *See* Mot. at 29-30. Unlike standing, ripeness "focuses not on whether the plaintiff was in fact harmed, but rather whether the harm asserted has matured sufficiently to warrant judicial intervention." *Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004) (quotation marks omitted)). Ripeness must be assessed separately to ensure the court is not "entangling [itself] in abstract disagreements" by prematurely addressing disputes not yet

"presented in clean-cut and concrete form." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995); *see also Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006) ("[T]here may be standing without ripeness.").

Article III ripeness bars Plaintiffs' claims because they present the Court with only an abstract dispute, not an "imminent" injury. *Am. C.L. Union v. Johnson*, 194 F.3d 1149, 1155 (10th Cir. 1999). Plaintiffs allege a general desire to deadname and misgender, outside the context of any specific interaction. Because CADA's framework is highly fact-specific, this leaves the Court to speculate over whether and when any such interaction might rise to the level of harassment that denies individuals full and equal enjoyment of a public accommodation's goods and services, as well as how CADA enforcement based on that particular interaction might implicate Plaintiffs' constitutional rights. *See Renne v. Geary*, 501 U.S. 312, 322 (1991) (First Amendment challenge to political-endorsement ban unripe where court did "not know the nature of the endorsement, how it would be publicized, or the precise language" that might be barred); *Babbitt*, 442 U.S. at 304 (First Amendment challenge to provision allowing employers to deny unions' access to facilities was unripe because it "depend[ed] inextricably upon the attributes of the situs involved," and it was "impossible to know whether access w[ould] be denied in places fitting appellees' constitutional claim," rendering any opinion "patently advisory"). With the Court and Defendants thus adrift, there is no controversy for Article III purposes.

Prudential ripeness independently supports dismissal. Plaintiffs' claims are not fit for judicial review because they turn on myriad unknown facts that have yet

to develop. Whether CADA might prohibit Plaintiffs' acts of deadnaming and misgendering is an inherently contextual inquiry that cannot be resolved in a vacuum. And without CADA's application to any particular interaction involving misgendering or deadnaming, the questions of how CADA's enforcement might implicate Plaintiffs' constitutional rights or how the State's interests would factor into the balance remain similarly amorphous. *See, e.g.*, *Elend*, 471 F.3d at 1211 (challenge to "allegedly unconstitutional protest zones" was "unfit for judicial decision on ripeness grounds" because "that analysis depends so critically on the location and circumstances of the protest zone"); *Norton v. Ashcroft*, 298 F.3d 547, 554–55 (6th Cir. 2002) (challenge unripe where violation of statute required "pattern of activity," plaintiffs had "not engaged in such a pattern," and "without a concrete set of facts, [the court] would be forced to speculate regarding the specific components of a 'pattern of activity' and the likelihood that the Act might be applied to them"); *cf. Peck v. McCann*, 43 F.4th 1116, 1133–34 (10th Cir. 2022) (claims were ripe where they presented a "purely legal question, accompanied by a joint statement of stipulated facts").

The other prudential factors similarly favor withholding review. The Division's rules have barred harassment via misgendering and deadnaming for nearly two decades without triggering any enforcement action, and Plaintiffs face no imminent enforcement. Prudential ripeness independently requires dismissal.

## CONCLUSION

For these reasons, Commission and Division Defendants request that the Court overrule the R&R and grant the motion to dismiss as to all Defendants.

Dated this 22nd day of May, 2026.

PHILIP J. WEISER
Attorney General

For Defendants Aubrey C. Sullivan, Sergio Cordova, Geta Asfaw, Mayuko Fieweger, Daniel S. Ward, Jade R. Kelly and Eric Artis:

*s/ Nora Q.E. Passamaneck*
Nora Q.E. Passamaneck
Senior Assistant Attorney General
Helen Norton
Deputy Solicitor General
Janna K. Fischer
Senior Assistant Attorney General
Dominick D. Schumacher
Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6000
FAX: (720) 508-6032
nora.passamaneck@coag.gov
helen.norton@coag.gov
janna.fischer@coag.gov
dominick.schumacher@coag.gov