**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| DEFENDING EDUCATION, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>AUBREY C. SULLIVAN, in her official capacity as the Director of the Colorado Civil Rights Division, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-01572-RMR-MDB |
| COMMITTEE OF FIVE, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>AUBREY C. SULLIVAN, in her official capacity as the Director of the Colorado Civil Rights Division, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-01668-RMR-MDB |
| DOXA ENTERPRISES, LTD.,<br><br>*Plaintiff*,<br><br>v.<br><br>AUBREY C. SULLIVAN, in her official capacity as the Director of the Colorado Civil Rights Division, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-02177-RMR-MDB |

## THE ATTORNEY GENERAL'S OBJECTION TO THE REPORT & RECOMMENDATION ON HIS MOTION TO DISMISS

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. The R&R erred in denying the Attorney General sovereign immunity. .......... 1

A. The R&R was wrong to determine that the Attorney General's office's obligation to represent the Commission at hearings shows a "particular duty to enforce" CADA .......... 1

B. TheAttorney General's discretionary role as a complainant is insufficient to pierce soverign immunity .......... 4

II. The R&R erred by failing to address standing as to the Attorney General. .......... 7

CONCLUSION .......... 9

## INTRODUCTION

The Report and Recommendation (R&R) misapplied *Ex parte Young*, treating the Attorney General's client service duties to state bodies like the Colorado Civil Rights Commission as sufficient to establish an enforcement duty that overcomes sovereign immunity. In so doing, the R&R erred. Acting as legal counsel for the Commission does not confer upon the Attorney General a "particular duty" to enforce CADA. And because the R&R failed to address the Attorney General's argument that Plaintiffs face no credible threat of enforcement from him, it also erred in finding Plaintiffs have standing to sue him. All claims against the Attorney General should be dismissed.

## ARGUMENT

### I. The R&R erred in denying the Attorney General sovereign immunity.

The Attorney General is entitled to sovereign immunity because he has neither a "particular duty to enforce" CADA nor any "demonstrated willingness" to do so, both of which are required to come within the *Ex parte Young* exception. *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024).

#### A. The R&R was wrong to determine that the Attorney General's office's obligation to represent the Commission at hearings shows a "particular duty to enforce" CADA.

The Attorney General lacks a particular duty to enforce CADA because serving as a lawyer to the Commission by presenting a charge at a hearing does not amount to "enforcement" of CADA by the Attorney General. In concluding otherwise, the R&R erred in several ways. *See* R&R at 27–28.

*First*, the R&R applied an overly lenient standard. It reasoned that the Attorney General need have only "some connection" to the enforcement of a challenged law or

merely “assist[]. . . in giving effect to the law.” R&R at 28 (citing *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007)). But those formulations do not eliminate *Ex parte Young*’s requirement that a state actor have a “particular duty to enforce” the law at issue. *See, e.g.*, *Free Speech Coal.*, 119 F.4th at 736 (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). A particular duty “requires a nexus between the defendant and *enforcement* of the challenged statute.” *Peterson v. Martinez*, 707 F.3d 1197, 1206 (10th Cir. 2013) (emphasis in original) (rejecting overly broad reading of the “some connection” language and holding Colorado Director of Department of Public Safety entitled to sovereign immunity despite maintaining a database used by sheriffs who implement and administer the challenged concealed handgun licensing law). That the state actor is “connected” to the law in any manner does not suffice.

*Second*, the R&R erred on the merits in concluding that the Attorney General has a particular enforcement duty sufficient for *Ex parte Young* when lawyers in the Attorney General’s office provide legal representation to state agencies that themselves are involved in enforcement. When lawyers employed by the Attorney General’s office represent the Commission, they serve as the Commission’s agents and act in furtherance of its goals and interests. In that context, the Commission directs the enforcement action, while the Attorney General acts with no independent or discretionary enforcement authority that need be enjoined. *See* C.R.S. § 24-34-306(4) (the Commission “shall issue” notice and complaint); Colo. RPC 1.2(a) (“[A] lawyer shall abide by a client’s decisions concerning the objective of representation[.]”).

Moreover, when lawyers from the Attorney General’s office represent a state agency client, they do so out of a general statutory obligation, *e.g.*, C.R.S. § 24-31-

101(1)(a), and such general legal duties have been repeatedly deemed insufficient to draw the Attorney General into the *Ex parte Young* exception. *See, e.g.*, *Free Speech Coal.*, 119 F.4th at 739; *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010). To pierce the Attorney General's sovereign immunity based on his general obligation to represent the Commission (or any other state body) as its attorney would make him "a party as a representative of the state," and thus "make the state a party" in violation of its sovereign immunity. *Ex parte Young*, 209 U.S. at 157.

*Third*, the R&R relies on two cases, *Masterpiece Cakeshop v. Elenis*, 445 F. Supp. 3d 1226, 1253 (D. Colo. 2019) ("*Masterpiece II*"), and *Bella Health and Wellness v. Weiser*, 793 F. Supp. 3d 1320 (D. Colo. 2025)[1], which are wrong on the merits for the same reasons the R&R is: the Attorney General's representation of a client agency that enforces a challenged statute is not grounds for denying him sovereign immunity. *See* R&R at 28–29. This Court need not repeat their errors. *See Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado*, 255 F. Supp. 3d 1064, 1085 (D. Colo. 2017) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (citation omitted)). Moreover, *Bella Health* is distinguishable. There, the court focused on language in the Medical Practice Act requiring that the "Attorney General shall prosecute" certain cases. C.R.S. § 12-240-125(5)(d). Here, CADA does not obligate the Attorney General to prosecute complaints; it permits the Commission to

[1] Although the R&R cites to an earlier order in the *Bella Health* case, reported at 699 F. Supp. 3d 1189 (D. Colo. 2023), the Attorney General infers from the pin cites and quotes that the R&R intended to cite to the later order reported at 793 F. Supp. 3d 1320 (D. Colo. 2025).

do so, and the Attorney General serves as the Commission's attorney or agent. *See* C.R.S. § 24-34-306(8) ("The case in support of the complaint shall be presented at the hearing by one of the commission's attorneys or agents."); *also* 8 Colo. Code Regs. 708-1, Rule 10.7(A)(3) (Commission rule identifying the "attorney general's office" as its attorney for administrative enforcement actions). Thus, the Attorney General's obligation to represent the Commission does not confer on him a particular duty to enforce CADA.

**B. The Attorney General's discretionary role as a complainant is insufficient to pierce sovereign immunity.**

The R&R did not address it, but Plaintiffs have argued that the Attorney General lacks sovereign immunity because of his discretionary ability to submit a charge of discrimination to the Colorado Civil Rights Division. This Court should not adopt Plaintiffs' alternate theory, either.

The enforcement-via-complainant theory fails most clearly at the second *Ex parte Young* element: the Attorney General has demonstrated no willingness to exercise his discretion to file a charge. Plaintiffs have not alleged that any Attorney General has ever, in the decades of CADA's existence, filed a charge of discrimination under Parts 6 or 7 of CADA, let alone one related to deadnaming or misgendering. And the misgendering and deadnaming provisions are not new—they have existed in regulation for years. *See* 3 Colo. Code Regs. 708-1, Rule 81.6(A)(4) (promulgated in 2009). *Ex parte Young* applies only where Plaintiffs show an "ongoing violation of federal law," *see Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002), which requires a "demonstrated willingness" to enforce a challenged statute. The "ongoing violation" and "demonstrated willingness" standards show that *Ex parte Young* is concerned with the prospect of present enforcement, not whether an official may

hypothetically seek to enforce a statute at an unknown time in the future. Even if the Attorney General had a particular duty to enforce CADA via his role as a potential complainant, because he has no willingness to do so, *Ex parte Young* fails. The Attorney General's long history of declining to act as a complainant is dispositive.

Even so, the Attorney General's ability to file a CADA charge with the Division does not amount to a particular duty to enforce Parts 6 and 7 of CADA. As CADA makes clear, when the Attorney General files a charge, he does so "in the same manner" as an individual complainant. C.R.S. § 24-34-306(1)(b). Even then, unlike an aggrieved individual, who may seek damages, the Attorney General is "limited to equitable relief to eliminate the discriminatory or unfair practice." *Id*. And if he were to file a charge, any resulting investigation or enforcement of CADA would be handled by the Division and Commission. *See* Mot. at 8. This authorization is insufficient to establish a particular duty. *See Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013) ("[W]hen a state law explicitly empowers one set of officials to enforce its terms, a plaintiff cannot sue a different official *absent some evidence* that the defendant is connected to the enforcement of the challenged law." (emphasis added)); *see also Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 967 (10th Cir. 2021) (holding that New Mexico attorney general was entitled to sovereign immunity where challenged law empowered the independent Public Employee Labor Relations Board—not the attorney general—to enforce state's exclusive representation law).

Plaintiffs have argued that the Attorney General has a particular enforcement duty because Commission regulations state that he "shall" file a civil action in district court if, after the Attorney General files a charge, the Division makes a finding of no

probable cause. *See* 3 Colo. Code Regs. § 708-1:10.12(D)(1). But the statute makes the filing of a civil action by any complainant who is denied administrative relief discretionary, not mandatory, *see* C.R.S. § 24-34-306(2)(b)(I)(B), as does a later subsection of the same regulation, *see* 3 Colo. Code Regs. § 708-1:10.12(D)(2) ("If the . . . Attorney General wishes to proceed to district court, the action must be filed within ninety (90) days . . . ."). Further, the prospect that the Attorney General might be in a position to file a civil action is highly attenuated, based on a series of hypotheticals. Before the Attorney General could file a civil action, he would first need to conclude that there was a discriminatory practice posing a significant societal or community impact, C.R.S. § 24-34-306(1)(b); he would need to file a complaint with the Division, *id.*; either the Division would need to disagree and issue a finding of no probable cause or fail to timely investigate, *id.* §§ 24-34-306(2)(b)(I), 15, or the Commission would need to decline to set the matter for a hearing after a probable cause finding was issued, *id.* § 24-34-306(4), (11); and the Attorney General would then need to disagree with the findings of the Division's investigation or the Commission's determination and conclude that filing a civil action was warranted. This "series of hypotheticals" does not satisfy *Ex parte Young*. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 43–44 (2021) (possibility that state board might in the future promulgate a rule that would enable the attorney general to take enforcement action was a "series of hypotheticals" insufficient for *Ex parte Young*). And in any event, the Attorney General has never filed a complaint with the Division, much less attempted to bring a civil action.

Because Plaintiffs have failed to show that the Attorney General has a demonstrated willingness to exercise even his limited discretion to serve as a

complainant, suit against him is barred by sovereign immunity.

## II. The R&R erred by failing to address standing as to the Attorney General.

In his Motion to Dismiss, the Attorney General joined the Division and Commission's arguments related to standing and ripeness, but he also separately asserted that Plaintiffs failed to allege they faced any credible threat of CADA enforcement from the Attorney General. *See* Mot. at 12–14; Reply at 6–10. The R&R concludes (incorrectly) that Plaintiffs face a credible threat of enforcement based on Director Sullivan's lack of disavowal, but it does not specifically address whether Plaintiffs independently face a credible threat of enforcement from the Attorney General. *See* R&R at 20–21. The R&R erred by failing to hold Plaintiffs to their burden. *See Murthy v. Missouri*, 603 U.S. 43, 61 (2024) ("[P]laintiffs must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek." (quotation marks omitted)).

To the extent the R&R implies Plaintiffs face a credible fear of enforcement from the Attorney General based on the conclusion that he represents the Commission in hearings, that conclusion would be error. Plaintiffs face no credible threat of enforcement from the Attorney General when attorneys from his office act as the Commission's counsel at administrative hearings. As discussed above, such a scenario would reflect enforcement by the Commission, not the Attorney General. If the Commission were enjoined from enforcing CADA against Plaintiffs, there would be no hearings at which lawyers from the Attorney General's office could serve as the Commission's counsel, and there would be no conduct by the Attorney General left to enjoin. Indeed, Plaintiffs' efforts to obtain an injunction against the Attorney General for

his role at Commission hearings is tantamount to a plaintiff seeking to enjoin a private party's conduct and then filing for an injunction against that party's lawyers, as well.

Notably, while the R&R relied on *Bella Health* for its conclusion that the Attorney General lacks sovereign immunity, it failed to engage with *Bella Health*'s holding on standing. There, the plaintiffs challenged two sections of a law, and while the court held the Attorney General lacked sovereign immunity for plaintiffs' challenge to one section of the law, it also concluded they lacked standing to sue the Attorney General over a separate section of the law. The factors that resulted in plaintiffs lacking standing in that case are also present here. Like in *Bella Health*, there is a lengthy history of non-enforcement. 793 F. Supp. 3d at 1337. Although H.B. 25-1312 is relatively new, CADA is decades old. H.B. 25-1312 merely amended the definition of gender expression, one of CADA's protected classes, but did not add new operative provisions or change CADA's categories of prohibited discriminatory acts. As in *Bella Health*, the relevant focus should be on the Attorney General's willingness to file any charge under Parts 6 or 7 of CADA. And Plaintiffs do not identify any evidence that any Attorney General has ever done so over the decades CADA has been in force. Also as in *Bella Health*, Plaintiffs have not pointed to any evidence that a third-party complaint directed to the Attorney General would automatically trigger the Attorney General filing a CADA charge. *Id.* To the contrary, there is no evidence any such charge has ever been filed. Finally, while the Attorney General has not issued a formal disavowal, Plaintiffs do not allege any facts to plausibly suggest that the Attorney General might imminently change his longstanding practice of not filing charges under Parts 6 and 7 of CADA. Accordingly, there is no credible threat sufficient to confer standing.

While Plaintiffs have relied on the Tenth Circuit's opinion in *303 Creative v. Elenis* to argue that they face a credible threat of CADA enforcement from the Attorney General, *303 Creative* did not resolve the precise issue raised here: whether Plaintiffs face a credible threat of enforcement by the Attorney General, as opposed to a threat of enforcement by the Division or Commission. In *303 Creative*, the Tenth Circuit's credible-threat analysis grouped all these defendants together, describing the credible threat of enforcement the plaintiff faced from "Colorado." *303 Creative LLC*, 6 F.4th at 1174.[2] But as the Supreme Court's later decision in *Murthy v. Missouri* makes clear, Plaintiffs must establish standing as to each defendant separately. *See* 603 U.S. at 61. They have not done so here. Because Plaintiffs cannot show a credible threat of enforcement by the Attorney General, they lack standing for their claims against him.

Finally, Plaintiffs also fail to show standing as to the Attorney General because they fail to show they intend to engage in conduct arguably proscribed by CADA. Pursuant to Federal Rule of Civil Procedure 10(c), the Attorney General joins and adopts by reference the arguments made in the Division and Commission's Objection regarding standing and ripeness.

## CONCLUSION

The Attorney General asks this Court to reject the R&R and dismiss all claims against him.

---

[2] By contrast, the *303 Creative* court did separately analyze whether the plaintiff's proffered injury was traceable to the Attorney General and would be redressed by an injunction against him, answering both questions in the affirmative. 6 F.4th at 1175. But in doing so, the court relied in part on what it deemed a concession by the State in that litigation that he possessed limited enforcement authority. *See id.* at 1175. Moreover, those are distinct questions from whether the plaintiff faced a credible threat of enforcement by the Attorney General sufficient to create an injury in fact.

RESPECTFULLY SUBMITTED this 22nd day of May, 2026,

PHILIP J. WEISER
Attorney General

*s/ Lane Towery*

***Talia Kraemer****
Senior Assistant Attorney General
***Lane Towery****
Assistant Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, Colorado 80203
Telephone: (720) 508-6000
talia.kraemer@coag.gov
lane.towery@coag.gov
*Counsel of Record

*Counsel for the Attorney General in his official capacity*