**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-02177

DOXA ENTERPRISES, LTD d/b/a Born Again Used Books,

*Plaintiff*,

vs.

AUBREY C. SULLIVAN, Director of the Colorado Civil Rights Division, in her official capacity;
SERGIO RAUDEL CORDOVA, GETA ASFAW, MAYUKO FIEWEGER, DANIEL S. WARD, JADE ROSE KELLY, and ERIC ARTIS, as members of the Colorado Civil Rights Commission, in their official capacities; and
PHIL WEISER, Colorado Attorney General, in his official capacity;

*Defendants*.

---

**PLAINTIFF'S RESPONSE TO DIVISION AND COMMISSION DEFENDANTS' MOTION TO CERTIFY A QUESTION OF LAW**

---

## INTRODUCTION

Since Plaintiff Born Again Used Books (the "Bookstore") sued in July 2025, Colorado has known about the constitutional issues in this case. The Bookstore raised its First and Fourteenth Amendment claims in its complaint, as well as its preliminary-injunction motion. In response, Colorado took jurisdictional discovery and fully briefed Born Again Used Books' standing in both the preliminary-injunction motion and Colorado's separate motion to dismiss. This Court ruled on both motions, the Bookstore appealed the preliminary injunction ruling to the 10th Circuit, and the parties finished briefing that appeal. Now, more than a year into this case, on the eve of the 10th Circuit oral argument, and only after losing its motion to dismiss, Colorado seeks further delay and distraction by certifying a non-dispositive question to the Colorado Supreme Court.

The Court should deny that gambit. Courts generally will not certify questions presented only after the requesting party received an adverse ruling. Colorado's proposed question is not determinative of any constitutional issues before the Court. Plus, certification would unnecessarily delay getting to judgment on the merits, which this Court has a clear path to reach. Certification would undermine comity principles by unnecessarily burdening a sister court with a request for little more than an advisory opinion. Even if the Colorado Supreme Court answered Colorado's proposed question the way it wants, this Court would still have to analyze Born Again Used Books' constitutional claims. So, the Court should deny the Division and Commission Defendants' motion to certify a question of law.

## BACKGROUND

On July 16, 2025, Born Again Used Books brought this suit, alleging that recent amendments to the Colorado Anti-Discrimination Act ("CADA") violated the Bookstore's First and Fourteenth Amendment rights by requiring it to use preferred pronouns. *See*

V.C., ECF no. 1. That same day, the Bookstore filed a motion for a preliminary injunction, alleging that it suffered irreparable harm from CADA's constitutional violations. *See* Mem. in Support of Mot. for Prelim. Inj. ("MPI Br."), ECF No. 4-1. The Bookstore explained that it violated CADA every time it referred to a transgender-identifying individual with a biologically accurate pronoun; in so doing, it denied transgender-identifying people the full and equal enjoyment of the privilege and service, enjoyed by those who identify as cisgender, of being referred to by their preferred pronouns. *Id.* at 5. After insisting on and taking jurisdictional discovery, Colorado responded to the Bookstore's preliminary-injunction motion and filed motions to dismiss, arguing that it lacked standing. *See* Defs.' Consolidated Opp'n to Mots. For Prelim. Inj. ("MPI Resp."), ECF No. 35; Division and Commission Defs.' Consolidated Mot. to Dismiss ("D&C MTD"), ECF No. 34.

According to Colorado, a company only violates CADA if its use of accurate pronouns amounts to harassment, which depends in part on the listener's subjective reaction to the language—whether the listener perceives it as "subjectively" hostile. *See* MPI Resp. at 6. Colorado has refused to define with any degree of clarity when such language constitutes harassment, instead falling back on the claim that the analysis is "highly fact-specific and dependent on surrounding circumstances." *Id.* at 5. Indeed, no meaningful definition is possible under Colorado's interpretation since so much turns on the listener's subjective perception.

But Director Sullivan doesn't deny that a single use of biologically accurate pronouns can amount to prohibited harassment—and thus makes the place of public accommodation liable for a CADA violation. Pl.'s Reply in Support of Mot. for Prelim. Inj. App. ("MPI Reply App."), ECF No. 46–1 at 815, 821, 823, 825. And Colorado's expert testified that "misgendering" "is an insult to [people's] sense of identity, and they will

typically react with feeling hurt, feeling stigmatized, feeling upset." *Id.* at 644. Translation: they'll typically perceive it as hostile. So Born Again Used Books risks violating the law every time it uses biologically accurate language.

Blowing past all this, Colorado argued to this Court that it couldn't determine whether the Bookstore's exclusive use of biologically accurate pronouns amounted to harassment. *See* MPI Resp. at 30. So, according to Colorado, Born Again Used Books' conduct was not arguably proscribed by CADA, nor did it create a credible risk of prosecution. *See id.*

Applying a heightened standard for disfavored injunctions, the Court found at the preliminary-injunction stage that the Bookstore lacked standing because it did not face a credible threat of prosecution. *See* Order Adopting MPI R&R ("MPI Order"), ECF No. 60 at 22. Born Again Used Books' appeal of that ruling is currently pending at the Tenth Circuit, raising arguments as to standing and the merits of the constitutional claims. *See* Opening Br. of Appellant ("10th Cir. Br."), ECF no. 17, *Doxa Enterprises, Ltd. v. Sullivan*, No. 26-1103 (10th Cir. June 8, 2026). Oral argument on the appeal is set for November 16, 2026.

At the motion-to-dismiss stage, however, this Court found that the Bookstore did have standing. *See* Order Adopting MTD R&R ("MTD Order"), ECF No. 87 at 20. The Court held that, "[e]ven under CCRD Defendants' heightened harassment standard, Plaintiffs' intended conduct could be found to violate CADA and, thus, is arguably proscribed by CADA." *Id.* at 19.

Now, well over a year into this case, Colorado moves to certify the following question ("Proposed Question") to the Colorado Supreme Court:

> When a complainant's claim for denial of the full and equal enjoyment of a place of public accommodation under C.R.S. § 24-34-601(2)(a) turns exclusively on statements made based on the complainant's protected

status, must the complainant establish that the statements create a subjectively and objectively hostile environment?

## LEGAL STANDARD

"[F]ederal courts have a duty to decide questions of state law, and should do so even if such questions are 'difficult or uncertain.'" *Bell v. 3M Co.*, 344 F. Supp. 3d 1207, 1228 (D. Colo. 2018) (quoting *Copier by & Through Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998)). Federal courts, therefore, "apply judgment and restraint before certifying." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1235 (10th Cir. 2012) (internal quotation omitted). "[C]ertification is only appropriate where the question is "'dispositive.'" *Lawson v. Spirit AeroSystems, Inc.*, 135 F.4th 1186, 1211 (10th Cir. 2025) (quoting *Kan. Jud. Rev. v. Stout*, 519 F.3d 1107, 1119 (10th Cir. 2008)). And "late blooming" requests for certification are disfavored. *Id.* When courts "see a reasonably clear and principled course," they will follow it without certification. *Id.*

## ARGUMENT

### I. Colorado only sought certification after an adverse ruling.

Courts generally will not "certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court." *Enfield ex rel. Enfield v. A.B. Chance Co.*, 228 F.3d 1245, 1255 (10th Cir. 2000) (internal quotation omitted). "That fact alone" is enough to deny certification here. *Id.* Colorado only seeks certification after the Court denied its motion to dismiss. And certification would unnecessarily delay adjudicating this case, even as Born Again Used Books' claims of irreparable harm are pending before the Tenth Circuit. *See* 10th Cir. Br. at 51. Thus, "certifying this issue to the [Colorado] Supreme Court at this late hour would be inefficient and wasteful of the parties' and the federal courts' previously

expended time, energy, and resources." *Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency*, 178 F.3d 1363, 1365 (10th Cir. 1999).

Colorado has no excuse for seeking certification this late in the case, well over a year after its filing. All the "appropriate constitutional inquiries" Colorado says will be served by certification have been before the Court since Born Again Used Books filed its complaint and motion for a preliminary injunction in July of 2025. Defs.' Mot. to Certify a Question of Law ("Mot."), ECF No. 89 at 11. Standing has been litigated before the Court twice over. *See* MPI Order; MTD Order. And while Colorado has so far failed to address Born Again Used Books' First Amendment arguments on the merits, the Bookstore raised them with the Court in its preliminary injunction motion and to the Tenth Circuit on appeal. *See* MPI Br. at 12–28; 10th Cir. Br. at 46.

At any point during that time, Colorado could have sought certification. But by its own admissions, it didn't need to. Colorado has repeatedly argued that its "harassment" standard was the only plausible interpretation of CADA. *See* MPI Resp. at 28. And it contended that the law doesn't even "arguably proscribe" Born Again Used Books' speech because it fails to rise to the level of harassment. *See* MPI Resp. at 23. Nothing has changed since Colorado made those arguments, save one thing—an adverse ruling from this Court finding that Born Again Used Books' speech *is* arguably proscribed by CADA under Colorado's own interpretation and that the Bookstore has standing. MTD Order at 21. Only after this adverse ruling does Colorado now suddenly reverse course and claim that CADA requires clarification.

The Court should not credit this maneuver, especially since "neither this court nor the parties would reap any conservation of time, energy, or resources were this court to grant certification." *Boyd*, 178 F.3d at 1365. As explained in more detail below, certification is not determinative in this case. Quite the opposite, certification would only

cause unnecessary delays. Once the Tenth Circuit rules on the preliminary-injunction motion, the case is set to proceed to further litigation. *See* Order, ECF No. 90 at 2. Yet certification could significantly prolong that timeline, even as Plaintiffs suffer irreparable harm. The Court should accordingly deny Colorado's "late blooming" certification request. *Lawson*, 135 F.4th at 1211; *see Liberty Mut. Ins. Co. v. Cont'l Ins. Co.*, 159 F. App'x 827, 831 (10th Cir. 2005) (denying certification request after adverse ruling); *Cahn v. Word*, 798 F. App'x 244, 253 (10th Cir. 2020) (same).

## II. The Proposed Question is not dispositive.

Certification is inappropriate because the Proposed Question is not "determinative of the case at hand." *Colony Ins. Co.*, 698 F.3d at 1235. Colorado contends that certification "will likely clarify the appropriate constitutional inquiries." Mot. at 11. But it never explains what those "constitutional inquiries" are or how certification would affect them. The Court has already determined that Born Again Used Books has standing, and certification will not be "outcome determinative" of any First or Fourteenth Amendment inquiry. *Liberty Mut. Ins. Co.*, 159 F. App'x at 831.

### A. Certification will not determine the standing analysis.

The Court has already settled the question of Born Again Used Books' standing. *See* MTD Order at 22. For standing in the pre-enforcement context, courts evaluate whether the plaintiff's intended conduct is "arguably proscribed" by the challenged law and risks "a credible threat of prosecution." *Scott v. Allen*, 153 F.4th 1088, 1097 (10th Cir. 2025). Under this framework, the Court held that, "*[e]ven under CCRD Defendants' heightened harassment standard*, Plaintiffs' intended conduct … is arguably proscribed by CADA." MTD Order at 19 (emphasis added). And it held that because "Plaintiffs' intended conduct is arguably proscribed by CADA, … there is a very real possibility that CADA could be enforced against them." *Id.* at 21. Thus, because the Court already

addressed standing *under a heightened harassment standard*, whether the Colorado Supreme Court finds that standard or some lower standard to apply would have no effect on the Court's settled analysis.

What's more, Colorado's motion is an admission that the Court got it right—Born Again Used Books' conduct is, indeed, arguably proscribed by CADA. The existence of "at least a plausible interpretation of a statute" is all that's needed to show the law arguably proscribes a plaintiff's conduct. *Kentucky v. Yellen*, 54 F.4th 325, 337 (6th Cir. 2022); *see Scott*, 153 F.4th at 1097 (plaintiff "need not show that his intended conduct *actually* violates the law, just that it *arguably* does"). And there would be no need to ask the Colorado Supreme Court "whether Division and Commission Defendants' interpretation of CADA is correct" if the law were not susceptible to multiple reasonable interpretations. Mot. at 6. Colorado's motion accordingly confirms the accuracy of the Court's standing analysis. Because certification "would not resolve" this already settled issue, it should be denied. *Lawson*, 135 F.4th at 1211.

At bottom, both sides agree that using biologically accurate pronouns *can* violate CADA—even under Colorado's harassment standard. *See* MPI Reply App. at 619 (refusal to accommodate gender expression is discriminatory practice), 763–64 (using preferred pronouns is "part of the analysis"). And no one disputes that Born Again Used Books' policy is to use exclusively biologically accurate pronouns. As this Court already held, that's more than enough to confer standing, even if Colorado gets its preferred answer to the Proposed Question. *See* MTD Order at 19. So the Proposed Question can't be dispositive as to standing.

### B. Certification will not determine the First and Fourteenth Amendment analysis.

The same goes for the constitutional issues. The Proposed Question addresses only a fraction of the challenged provisions and fails to settle the constitutional inquiries even as to the single provision it addresses.

*First*, because the Proposed Question only pertains to the Denial Clause, certification will not determine any of Plaintiffs' claims addressing the other challenged CADA provisions. In addition to the Denial Clause, Plaintiffs raise First Amendment challenges to the Publication Clause, Unwelcome Clauses, Advertisement Clauses, and gender expression definitions. *See* V.C. ¶¶ 110–123. And they raise Fourteenth Amendment vagueness challenges to the Unwelcome Clauses and gender expression and chosen name definitions. *See* V.C. ¶ 213–221. The Proposed Question is silent as to these provisions, which independently regulate different speech under different standards. *Compare* Colo. Rev. Stat. § 24-34-601(2)(a) (Denial Clause making it discriminatory practice to "deny … the full and equal enjoyment of … goods, services, facilities…"), *with* Colo. Rev. Stat. § 24-34-701(1)(c) (Unwelcome Advertisement Clause banning publications stating that "presence … by any person … purporting to be of any particular … gender expression … is unwelcome …").

Because the Proposed Question does not address these other provisions, it cannot be "determinative of the case at hand." *Colony Ins. Co.*, 698 F.3d at 1235. Therefore, even if the Proposed Question were certified, the Colorado Supreme Court likely could not answer the question. Under state law, it may only answer questions of law "which may be determinative of the *cause* then pending." C.A.R. 21.1(a) (emphasis added). By addressing only a portion of Born Again Used Books' claims, the Proposed Question is not determinative of this case, and it should not be certified.

*Second*, answering the Proposed Question won't even resolve the limited interpretive question directed at the Denial Clause. The Proposed Question asks only whether, to violate the Denial Clause, statements must "create a subjectively and objectively hostile environment." Mot. at 1. Yet according to Colorado, Commission Rule 81.6(A)(4) defines the extent of the Denial Clause. *See* Mot. at 5; MPI Reply App. at 773 (Rule 81.6 "analysis is implicit in determining whether an individual has been denied goods, services … based on a protected class"). That rule is more expansive than the Proposed Question, defining harassment as "conduct that creates an environment that is subjectively and objectively hostile, *intimidating*, or *offensive*." 3 Colo. Code Regs. § 81.6(a)(4) (emphasis added). Thus, by leaving out the "intimidating" and "offensive" language, the Proposed Question doesn't resolve whether Colorado's definition of harassment is correct, coming far short of resolving this case.

*Third*, even if the Proposed Question did resolve the scope of the Denial Clause, it still wouldn't obviate the need for First Amendment scrutiny. Recall Director Sullivan's admission that her proposed harassment standard can still punish a single use of biologically accurate language. That admission implicates the First Amendment because "there is no 'harassment exception' to the First Amendment's Free Speech Clause." *DeJohn v. Temple Univ.*, 537 F.3d 301, 316 (3d Cir. 2008). "[A]nti-harassment laws, insofar as they regulate speech based on content, are subject to First Amendment scrutiny." *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1307 (11th Cir. 2017).

Anti-harassment laws may survive First Amendment scrutiny in the limited circumstance where they "prohibit speech whose *non-expressive* qualities promote discrimination." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 208 (3d Cir. 2001). Even then, such laws are limited to unique environments, such as "preventing discrimination in the workplace … and in the schools." *Id.* at 209. When a harassment

law "consists of speech targeted solely on the basis of its expressive content," it violates the First Amendment. *Id.*

A harassment law that punishes—or sometimes punishes—the use of biologically accurate language in public accommodations does exactly that. "Pronouns can and do convey a powerful message implicating a sensitive topic of public concern." *Meriwether v. Hartop*, 992 F.3d 492, 508 (6th Cir. 2021). Thus, a harassment rule regulating their use "only suppresses one side of the debate, strangling the marketplace of ideas in a way that is 'uniquely harmful to a free and democratic society.'" *Tennessee v. Cardona*, 737 F. Supp. 3d 510, 547 (E.D. Ky. 2024) (quoting *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024)). For this reason, courts across the country have held that harassment rules requiring the use of preferred pronouns, even under a "subjectively and objectively offensive" and "severe or pervasive" standard, likely violate the First Amendment. *Id.* at 548–49; *see*, *e.g.*, *Texas v. United States*, 740 F. Supp. 3d 537, 550 (N.D. Tex. 2024); *Kansas v. United States Dep't of Educ.*, 739 F. Supp. 3d 902, 928 (D. Kan. 2024); *Alabama v. U.S. Sec'y of Educ.*, No. 24-12444, 2024 WL 3981994, at *6 (11th Cir. Aug. 22, 2024).

Accordingly, even if the Colorado Supreme Court found that Colorado's harassment standard applied, that wouldn't settle the First Amendment issues. The Court still must determine whether CADA regulates speech based on content or viewpoint. *See Chiles v. Salazar*, 607 U.S. 627, 640 (2026) (content-based restrictions are "presumptively unconstitutional"). And laws regulating pronoun usage, even under the guise of a harassment regulation, are particularly suspect under a viewpoint-discrimination analysis. *See Cardona*, 737 F. Supp. at 547 (harassment rule requiring use of "preferred" pronouns discriminated based on viewpoint); *cf. Meriwether*, 992 F.3d at 508 ("[p]ronouns can and do convey a powerful message implicating a sensitive topic

of public concern."); *Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 572 (2023) (same). Colorado's appeal to listener reaction in the guise of "subjective" hostility just makes the problem worse. After all, "[l]isteners' reaction to speech is not a content-neutral basis for regulation." *Forsythe Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 134 (1992).

Certification would also fail to settle the overbreadth analysis, which asks whether a statute regulates "a substantial amount of protected expressive activity." *United States v. Williams*, 553 U.S. 285, 293, 297 (2008). That's because whether CADA is limited to statements that "create a subjectively and objectively hostile environment" tells the Court little to nothing of what speech CADA actually regulates in the pronoun context. Colorado has consistently refused to explain when pronoun usage is "objectively hostile," relying time and again on the "highly fact-specific" nature of the inquiry. MPI Resp. at 5. But it retains the discretion to find that a single instance of deadnaming or misgendering could create an "objectively hostile" environment. MPI Reply App. at 815, 821, 823, 825.

The same goes for Born Again Used Books' Fourteenth Amendment vagueness claim. For one thing, the Proposed Question addresses only the Denial Clause, not the Unwelcome Clauses or the gender expression and chosen name definitions challenged on vagueness grounds. *See* V.C. ¶¶ 213–221. For another, Colorado's confusion about what constitutes harassment demonstrates that a harassment standard raises more questions about what CADA prohibits than it answers, "fail[ing] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1233 (10th Cir. 2023) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)).

In sum, regardless of whether or how the Colorado Supreme Court answers the Proposed Question, the Court still must analyze whether CADA's regulation of Born

Again Used Books' speech squares with the First and Fourteenth Amendments. Colorado's interpretation isn't a get-out-of-the-Constitution-free card because CADA regulates speech based on content and viewpoint regardless. Since certification will not be *dispositive* as to the constitutional analysis, Colorado's motion should be denied. *See*, *e.g.*, *Lawson*, 135 F.4th at 1211 (denying certification where answer would not be "dispositive"); *Florom v. Elliott Mfg.*, 867 F.2d 570, 578 n.4 (10th Cir. 1989) (same); *Cahn*, 798 F. App'x at 253 (same); *Liberty Mut. Ins. Co.*, 159 F. App'x at 831 (same).

### C. Colorado's cited cases do not show that the Proposed Question is dispositive.

Colorado's cited cases do not lead to a contrary conclusion. In *R.A.V. v. City of St. Paul*, the Supreme Court held that even regulations of speech falling into unprotected categories are unconstitutional if they discriminate based on viewpoint. 505 U.S. 377, 386 (1992). Colorado suggests that CADA could validly prohibit "fighting words," an unprotected category of speech. *See* Mot. at 11. But the Proposed Question doesn't ask the Colorado Supreme Court to limit CADA's speech regulation to fighting words, nor is that construction textually possible. And as *R.A.V.* instructs, this Court would have to analyze whether CADA discriminates based on viewpoint regardless.

Next, in *Bates v. Pakseresht*, the Ninth Circuit struck down a state policy requiring adoptive parents to use biologically inaccurate pronouns. 146 F.4th 772, 786 (9th Cir. 2025). The court found the law discriminated based on viewpoint and rejected arguments that it was a licensing scheme regulating only speech incidental to conduct. *Id.* at 787. To be sure, in passing dicta, the court said the state's position would be stronger if it "simply outlawed harassment or denigration of LGBTQ children." *Id.*; *see* Mot. 11. Of course, laws with typical harassment definitions would fare differently under the First Amendment when applied to bar harassing conduct towards adoptive children.

But Colorado did not pass that law, nor has it applied its law that way. Instead, Colorado passed a law that bans speech based on its expressive content, and Colorado officials have conceded that their law could ban even a single instance of biological pronoun use toward independent adults. *See* MPI Reply App. at 815, 821, 823, 825.

Lastly, Colorado cites *Taking Offense v. California*, which held that a law banning discrimination towards LGBT individuals in long-term care facilities "properly regulate[ed] *discriminatory conduct* aimed at vulnerable seniors who typically constitute a captive audience, residing in long-term care facilities that have become, in effect, their homes." 578 P.3d 409, 428 (Ca. 2025), *as modified* (Nov. 25, 2025). But that ruling came before *Chiles v. Salazar,* where the Supreme Court condemned state efforts to treat words as conduct by invoking statutory labels. 607 U.S. at 645. Even beyond that, *Taking Offense* emphasized that the California law only sought to protect "the ability of … residents to obtain long-term medical and related intimate personal care" and so did "not implicate a traditional marketplace of ideas setting" like the public-accommodation context in *303 Creative v. Elenis*. 578 P.3d at 431, 438. But here, CADA does apply in the public accommodation context, not "the unique long-term care facility setting." *Id* at 431–32. Colorado cites no case suggesting, let alone deciding, that there exists a First Amendment "harassment" exception in the public-accommodations context.

Colorado's cases are instructive to the extent they demonstrate that viewpoint-discriminatory laws like CADA violate the First Amendment. They do not demonstrate that certification will be dispositive or even helpful to the issues in this case.

## III. There is a clear course to final judgment without certification.

Certification is triply inappropriate here because there already exists a "reasonably clear and principled course" to follow. *Colony Ins. Co.*, 698 F.3d at 1236 (internal quotation omitted). "[F]ederal courts bear a duty to decide questions of state

law when necessary to render a judgment." *Id.* And federal courts routinely interpret recently passed statutes in First Amendment cases absent certification. *See*, *e.g.*, *NetChoice v. Weiser*, 808 F. Supp. 3d 1223, 1239 (D. Colo. 2025); *NetChoice, LLC v. Reyes*, 748 F. Supp. 3d 1105, 1123 (D. Utah 2024); *Black Emergency Response Team v. Drummond*, No. 24-6139, 2026 WL 2654160, at *6 (10th Cir. Sept. 9, 2026) (interpreting statute after Oklahoma Supreme Court *refused to answer certified questions* because doing so would not "eliminate the need to address a federal question" (internal quotation omitted)). Indeed, this Court has already interpreted CADA to the extent necessary to adjudicate Born Again Used Books' standing. *See* MTD Order at 19. And the practical effects of the parties' interpretations of CADA are not so far apart, if apart at all—neither denies that even a single instance of biologically accurate pronoun use could violate CADA. *See* MPI Reply App. at 815, 821, 823, 825.

The Court is accordingly well-positioned to interpret CADA to the extent necessary to adjudicate Born Again Used Books' constitutional claims, regardless of whether the interpretive question is "novel" as Colorado claims. *See* Mot. at 9. Even under Colorado's reading of CADA, well-trodden constitutional principles are at hand to determine the statute's constitutionality. *See*, *e.g.*, *Texas v. United States*, 740 F. Supp. 3d at 550 (adjudicating constitutionality of pronoun rule); *Meriwether*, 992 F.3d at 508 (same). And for the reasons explained above, *supra* § I.B, whether CADA prohibits only "harassment" or not, the First Amendment analysis cashes out the same way. Thus, because "the course [ahead] is reasonably clear," the Court should deny certification. *Colony Ins. Co.*, 698 F.3d at 1236; *Lawson*, 135 F.4th at 1211; *Liberty Mut. Ins. Co.*, 159 F. App'x at 831; *Sullivan v. Nationwide Affinity Ins. Co. of Am.*, 439 F. Supp. 3d 1236, 1239 (D. Colo. 2020), *aff'd*, 842 F. App'x 251 (10th Cir. 2021) (denying

certification despite "no binding Colorado authority answering the precise question before the Court").

## IV. Certification would undermine comity principles.

Lastly, Colorado is wrong to suggest that certification would serve principles of federalism, comity, and constitutional avoidance. *See* Mot. at 7. To the contrary, pitching a nondeterminative question to the Colorado Supreme Court encourages the sister court to waste time and resources on little more than an advisory opinion. In *Black Emergency Response Team v. Drummond*, for example, the Oklahoma Supreme Court declined to answer three of six certified questions. 571 P.3d 135, 142 (Okla. 2025). The case involved constitutional challenges to a state law, but the Oklahoma Supreme Court couldn't answer the three certified questions in a manner that would "avoid or alter the constitutional challenge to the statute." *Id.* The court was confident that federal courts could "reach a reasoned conclusion based on the facts before [them]," *id.*, which they proceeded to do, *see Drummond*, 2026 WL 2654160, at *9.

Like *Drummond*, the Proposed Question is not determinative of Born Again Used Books' First Amendment claims. *See*, *supra* § I.B. Comity is best served, then, by deciding the constitutional issues without unnecessarily involving a sister court. Similarly, because "any interpretation of [CADA] by Colorado's state courts would be irrelevant" to the ultimate determination of the constitutional issues, the federalism principles underlying *Pullman* abstention do not support certification. *Masterpiece Cakeshop Inc. v. Elenis*, 445 F. Supp. 3d 1226, 1244 (D. Colo. 2019).

## CONCLUSION

For the foregoing reasons, Born Again Used Books respectfully asks this Court to deny Division and Commission Defendants' motion to certify a question of law.

Respectfully submitted this 30th day of October, 2026,

*s/ Henry W. Frampton, IV*
Henry W. Frampton, IV (S.C. Bar No. 75314)
Jonathan A. Scruggs (Ariz. Bar No. 030505)
Mercer Martin (Ariz. Bar No. 038138)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 (facsimile)
jscruggs@ADFlegal.org
hframpton@ADFlegal.org
mmartin@ADFlegal.org

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

*s/ Henry W. Frampton, IV*
Henry W. Frampton, IV